[S. F. No. 14490. In Bank.—June 14, 1932.]

NORA CASSERLY, Petitioner, v. CITY OF OAKLAND (a Municipal Corporation) et al., Respondents.

Decoto & St. Sure for Petitioner.

C. Stanley Wood, City Attorney, and John W. Collier, Deputy City Attorney, for Respondents.

TYLER, J., *pro tem.*—Petition for writ of mandate.

The applicant is the widow of one William Casserly, deceased. At the time of his death Casserly was a member

of the Oakland fire department. His death was caused by broncho-pneumonia, which affliction was contracted in the performance of his duty as a fireman of such city on the sixth day of November, 1930, as the direct result of a fire drill participated in by him under orders from his superior officer. His death occurred on December 21st, following. Thereafter, petitioner herein duly filed an application before the Board of Trustees of the Firemen's Relief and Pension Fund of the city, praying that she be granted a·pension in accordance with the provisions of section 104, subdivision (1) (a) of the charter of the City of Oakland. Section (1) of the charter reads as follows: "Sec. 104 (1) The Board of Trustees shall, out of the Firemen's Relief and Pension Fund, provide for the family of an officer, member or employee of the Department, who may be killed while in the performance of his duty as follows:" Subdivision (a) of said section reads as follows: "(a) Should the decedent be married, his widow shall, as long as she shall remain unmarried, be paid a monthly pension equal to one half of the salary attached to the rank held by the decedent at the time of his death." After a hearing upon the application, the board found that Casserly had contracted the disease which caused his death as a direct result of the fire drill mentioned, but it concluded that he was not "killed" while in the performance of his duties, and the relief sought was denied.

The sole question here presented is whether a fireman who contracts a disease in the performance of his duty, and whose death occurs within a short time thereafter as the direct result thereof, is "killed while in the performance of his duty" within the meaning of section 104, subdivision (1) of the charter of the City of Oakland. Preliminary to a discussion of this question, it may be stated that the length of time elapsing between injury and death is not controlling, provided the injuries as here received are the proximate cause of the death. (*Averdieck* v. *Barris,* 87 Cal. App. 626 [262 Pac. 423].) The words "injury" and "killed", as used in the charter, and similar provisions which provide for compensation in cases of this character are not limited in their interpretation to injuries caused by external violence, physical force or as a result

of accident in the sense that the words are commonly used and understood, but they are given a much broader and liberal meaning. So construed they include any injury or disease arising out of and in the course of the employment, which causes incapacity or death. The word "injury" has reference not to some break in some part of the body or some wound thereon, or the like, but rather to consequences or disability that result therefrom. Courts are practically unanimous in holding that the words should be given a broad and liberal .construction in order that the humane purpose of the enactment may be realized. Such legislation should be applied fairly and broadly with a view to confer the benefits intended.

The courts of the various jurisdictions, in construing provisions of the character here involved, have held all character of diseases to be injuries where there is a causal connection between the work and the disease. These cases are extensively reviewed in *San Francisco* v. *Industrial Acc. Com.*, 183 Cal. 273 [191 Pac. 26]. It is there held that disease is included within the terms, where there exists the relation of cause and effect between the employment and the disease, as it is then a harmful effect upon the body. See, also, *Johnson's Case*, 217 Mass. 388 [104 N. E. 735], where it is held that where one is employed as a lead grinder and becomes sick by the absorption of lead in his system, he suffers a personal injury. To the same effect is *Hurle's Case*, 217 Mass. 223 [Ann. Cas. 1915C, 919, L. R. A. 1916A, 279, 104 N. E. 336], and *Brightman's Case*, 220 Mass. 17 [L. R. A. 1916A, 321, 107 N. E. 527]. In *United Paperboard Co.* v. *Lewis*, 65 Ind. App. 356 [117 N. E. 276], an employee became overheated and wet with perspiration while in the performance of his duty. He took a chill which developed nephritis as a direct result therefrom and the disease was held to be an injury in contemplation of the statute.

The same construction has been given to an accident insurance policy which insured against bodily injury sustained through accidental means. There the insured suffered an infection caused by contact with germs in the course of his employment. In holding this disease to be an injury, the court in the course of its opinion said:

"From the standpoint of pure reason, whether bodily injury, which produces a weakening or disintegration of the physical system is caused by flying germs or by flying shrapnel or by a poisoned arrow or by the sting of an insect is only a matter of degree as to the size or quality of the missile or instrumentality inflicting the injury." (*Moore* v. *Fidelity & Cas. Co.*, 203 Cal. 465, 471 [56 A. L. R. 860, 265 Pac. 207, 209].)

The policy of this state is to construe provisions of the character here involved liberally, serving as they do a beneficial purpose. (*Klench* v. *Board of Pension Fund Commrs.*, 79 Cal. App. 171 [249 Pac. 46]; *Hurley* v. *Sykes*, 69 Cal. App. 310 [231 Pac. 748].) So construed, we are of the opinion that the injury suffered by Casserly comes within the purview of the act.

By charter provisions of the city and county of San Francisco, provision is made for the family of a member of the police department who may be killed or injured while in the performance of his duty. One Buckley, a member of the department, in climbing a flight of stairs where his services in the performance of his duty were required, suffered a heart spasm from which thereafter and in a few hours he died. His widow made application for the benefits provided for under the charter. Relief was denied her on the ground that he was not killed while in the performance of his duties. This court held that the order denying the applicant a pension was a clear abuse of discretion, as the cause of his death was an injury in his occupation. (*Buckley* v. *Roche*, 214 Cal. 241 [4 Pac. (2d) 929].) The charter provision there construed is almost identical in terms with the charter provision here involved. The decision in that case is therefore here controlling. (See, also, *G. L. Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587 [200 Pac. 17]; *Knock* v. *Industrial Acc. Com.*, 200 Cal. 456 [253 Pac. 712]; *Fogarty* v. *Department of Industrial Relations*, 206 Cal. 102 [273 Pac. 791].) This conclusion is not only in keeping with the spirit but also with the letter of the charter provision in question.

From what we have said it follows that petitioner is entitled to the relief demanded. It is therefore ordered that

respondents grant and pay to petitioner the pension as prayed for in her application herein referred to.

Curtis, J., Seawell, J., Langdon, J., Preston, J., Waste, C. J., and Shenk, J., concurred.

Rehearing denied.