[Civ. No. 9968.   First Appellate District, Division One.—October 16, 1936.]

EVA K. BENNETT, Appellant, v. JOHN H. BRADY et al., Respondents.

Thomas & Sullivan for Appellant.

John J. O'Toole, City Attorney, and Thomas P. Slevin, Deputy City Attorney, for Respondents.

GRAY, J., *pro tem.*—The widow of a deceased police officer petitioned for the issuance of a writ of mandate compelling respondents to grant her a pension under the provisions of section 4, chapter 10, article VIII, of the former San Francisco charter. (Stats. 1917, p. 1708.) A judgment denying her such writ was entered after a general demurrer to her petition had been sustained without leave to amend. Her appeal presents the question as to whether or not her petition states a cause of action.

Briefly stating its essentials, her petition alleges that she is the unmarried widow of William M. Bennett, who at the time of his death had been a member of the San Francisco police department continuously since 1914 and had held the rank of lieutenant since December, 1929; that on October 30, 1931, while in the performance of his duties as such lieutenant, he had received injuries which directly and proximately caused his death on March 2, 1934, and that she had previously filed with respondents an application stating such facts and requesting the pension allowed by the charter. Her petition further states that respondents had heard her application; that she had presented to them evidence "*which established and proved all of the allegations*" of her application, but that notwithstanding the presentation of such evidence respondents had refused to award her the pension. Copies of her application, and of the transcript of the evidence taken at the hearings, are attached to and by reference incorporated in the petition.

■ In passing upon the sufficiency of the petition to state a cause of action, the attached transcript of evidence cannot be considered for the purpose of supplying any deficiency in its allegations. (*People* v. *Reid,* 195 Cal. 249 [232 Pac. 457, 36 A. L. R. 1435].) A petition in substantially the same form was held in *Hogan* v. *Retirement Board,* 13 Cal. App. (2d) 676 [57 Pac. (2d) 520], not to state a cause of action because it failed to show respondents had acted arbitrarily, capriciously, fraudulently, or without due regard for the applicant's rights. ■ To state a cause of action, the petition must set forth facts showing that a pension ought to have been allowed, and that respondents' refusal to do so was an abuse of their discretion. (16 Cal. Jur. 861.) If all the evidence produced at the hearings was susceptible of the sole construction that petitioner was entitled to a pension, respondents abused their discretion in refusing to award it and can be compelled by mandate to do so. (*Bank of Italy* v. *Johnson,* 200 Cal. 1 [251 Pac. 784].) However, the petition fails to bring itself within this rule, for it merely alleges that petitioner's evidence, not all the evidence, established and proved the allegations of her application. For aught that appears, her evidence may have conflicted with other evidence or supported different inferences. The general demurrer was properly sustained.

■ The parties, upon an erroneous assumption that the transcript of evidence aids the allegations of the petition, principally argue whether such evidence indisputably proves that the deceased, while in the performance of his duties, received an injury, which by aggravating a preexisting heart disease, hastened his death. They correctly agree that if it does, petitioner is entitled to a pension. (*Buckley* v. *Roche,* 214 Cal. 241 [4 Pac. (2d) 929].) In order to give their arguments the attention which counsel's zeal and industry in their presentation merit, it will be necessary to discuss such evidence, and in order to do so, to make the same erroneous assumption. At the first hearing his widow and sister each testified that deceased had been injured on May 25, 1914, in a collision between a motorcycle on which he was riding in the discharge of his duties and an automobile, and that thereafter until his death he had continuously complained of pain in the region of his liver

and had been treated unsuccessfully therefor by numerous doctors.

At the second hearing, a police captain testified that the department, on October 30, 1931, had held a drill, preparatory to annual inspection, which consisted of walking and standing in military formation over a period of several hours. His wife testified that on his return home from this drill he appeared pale and complained of shortness of breath and terrible pains around his heart. She further stated that on the same day he consulted a physician under whose care he continued until the former's death in 1933, and that this physician gave him digitalis and had him rest in bed for three months after December 6, 1931. X-rays of his heart, taken on this date, and a department record showing his absence from duty for four months after this date were introduced into evidence. Two certificates of the departmental physician were also read into the record. The first, dated March 29, 1932, stated that deceased had been absent from duty for 120 days because of heart and liver trouble and would be able to return for station duty on April 4, 1932. The second, under date of September 12, 1932, reported that deceased was suffering from a chronic heart condition and should be excused from drill. The death certificate gave cirrhosis of the liver, arteriosclerosis and myocarditis as the principal causes of death, and chronic nephritis as a contributing cause.

Petitioner called a medical expert who testified that the X-rays showed a heart so enormously enlarged as to have no reserve for further dilation in case of exertion. He expressed the opinion, based upon his examination of the X-rays and the hearing of the testimony of the police captain and petitioner at the second hearing, that the exertion of the drill had irreparably damaged deceased's heart by causing an acute decompensation or failure from which he never recovered, and that thereby his life was shortened. Another medical expert, in testifying at respondents' request, considered the death certificate, the two certificates of the departmental physician, the departmental report and petitioner's testimony at the first hearing, as well as the X-rays and the testimony of the second hearing. From these he was of the opinion that the death was caused by a chronic cardiovascular-renal disease and that, while the drill had caused decompensation, the medical treatment of

rest and digitalis had fully restored compensation and left only the original disease. Petitioner, upon a detailed analysis of each expert's reasons for his opinion, in which she stresses agreements and minimizes differences, argues that while the literal wording of the second expert's conclusion as to the cause of death differs from that expressed by the first, yet in reality his opinion accords with that of the first. Such argument, in that it involves the weight and effect of testimony and its interpretation, might properly be addressed to respondents as the triers of fact but cannot be considered by a court as proof that the two opinions did not conflict.

Respondents, however, were not concluded by the opinion of either expert but could draw their own conclusions from the facts shown by the testimony. (*Bach* v. *C. Swanston & Son*, 105 Cal. App. 72 [286 Pac. 1097].) The death certificate was *prima facie* evidence of the cause of death. (*Longuy* v. *La Societe Francaise*, 52 Cal. App. 370 [198 Pac. 1011].) Deceased's recovery from the heart injury received in the drill could be reasonably inferred from the length of time elapsing between his return to duty and his death. The case of *Buckley* v. *Roche, supra*, is readily distinguishable from the instant case because there the evidence did not present a conflict as to the cause of death since the parties had stipulated that the police officer's death was caused by a heart spasm resulting from his ascension of a stairway in the performance of his duty.

Since the evidence as to the cause of death was conflicting, respondents were authorized to decide such conflict and their decision cannot be controlled by mandate. (*Klevesahl* v. *Byington*, 1 Cal. App. (2d) 671 [37 Pac. (2d) 179].)

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.