[Civ. No. 15232. First Dist., Div. Two. Dec. 15, 1952.]

RAYMOND P. CORCORAN, Appellant, v. SAN FRANCISCO CITY AND COUNTY EMPLOYEES RETIREMENT SYSTEM et al., Respondents.

James C. Purcell and Michael Riordan for Appellant.

Dion R. Holm, City Attorney, and Clayton W. Horn, Deputy City Attorney, for Respondents.

WAGLER, J. pro tem.—Appellant was a limited tenure police patrolman appointed under the provisions of section 145.1 of the charter of the city and county of San Fran-

cisco. He applied to the Retirement Board of San Francisco for a pension on the ground of disability alleged to have resulted from an injury incurred in the performance of duty. His application was denied. Thereafter an application was made for a rehearing which was also denied. Appellant then filed his petition for a peremptory writ of mandate in the superior court to secure a review of the board's ruling. The writ was denied as was his subsequent motion for a new trial. From the judgment of the superior court he takes this appeal.

The legal status of the retirement board has been commented on in a number of cases. (*Naughton* v. *Retirement Board of S. F.*, 43 Cal.App.2d 254 [110 P.2d 714] ; *Brant* v. *Retirement Board of S. F.*, 57 Cal.App.2d 721 [135 P.2d 396] ; *Rogers* v. *Retirement Board*, 109 Cal.App.2d 751 [241 P.2d 611].) In 1945 at the suggestion of the judicial counsel the Legislature sought by the enactment of section 1094.5 of the Code of Civil Procedure to place in statutory form the law governing judicial review of administrative procedure as developed by the decisions of our courts. This section was amended in 1949.

In his petition for a peremptory writ of mandate before the superior court appellant attacked the decision of the retirement board on the sole ground of the insufficiency of the evidence. On this appeal appellant, seeking to apply the provisions of section 1094.5 of the Code of Civil Procedure, makes two principal contentions: (1) That the retirement board was guilty of a prejudicial abuse of discretion in that certain findings are not supported by the evidence and (2) that appellant did not receive a fair trial.

The retirement board being a "local" board as distinguished from a board exercising statewide jurisdiction, the superior court was not authorized to exercise its independent judgment on the evidence. (*Mogan* v. *Board of Police Commrs.*, 100 Cal.App. 270 [279 P. 1080] ; *McColgan* v. *Board of Police Commrs.*, 130 Cal.App. 66 [19 P.2d 815] ; *Hogan* v. *Retirement Board*, 13 Cal.App.2d 676 [57 P.2d 520] ; *Bennett* v. *Brady*, 17 Cal.App.2d 114 [61 P.2d 530] ; *Naughton* v. *Retirement Board of S. F.*, 43 Cal.App.2d 254 [110 P.2d 714] ; *Rogers* v. *Retirement Board*, 109 Cal.App. 2d 751 [241 P.2d 611].) Where it is claimed that the findings of the retirement board are not supported by the evidence the inquiry of the superior court is limited to the question of "whether there was any prejudicial abuse of

discretion,'' (Code Civ. Proc., § 1094.5(b)) and such an abuse of discretion can be found on the part of the retirement board only where its decision is "not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5(c).)

Under the system of dual review permitted in these cases, when it is claimed that the decision of the superior court lacks proper evidentiary support, the power of the appellate court begins and ends with the inquiry whether there is any substantial evidence, contradicted or uncontradicted, which in and of itself will support the conclusion reached by the superior court. (*Wing* v. *Kishi*, 92 Cal.App. 495 [268 P. 483]; *Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 P. 1157]; *Treadwell* v. *Nickel*, 194 Cal. 243 [228 P. 25]; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183]; *Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689]; *Taylor* v. *J. B. Hill Co.*, 31 Cal.2d 373 [189 P.2d 258]; *Moran* v. *Board of Medical Examiners*, 32 Cal.2d 301 [196 P.2d 20]; *Powell* v. *Pacific Electric Ry. Co.*, 35 Cal.2d 40 [216 P.2d 448]; *Richter* v. *Walker*, 36 Cal.2d 634 [226 P.2d 593].)

All of the proceedings before the retirement board including all exhibits and the proceedings on appellant's petition for a rehearing before that board were received in evidence by the superior court. These records show without conflict that on September 24, 1946, appellant was injured while on duty as a police officer separating the bumpers of two automobiles, that he continued to work until October 14th when he felt a sudden pain in the low back with numbness in the left lower extremity. On October 16, 1946, he entered the San Francisco Hospital and was examined by Dr. Francis J. Cox who later diagnosed his injury as a rupture of the intervertebral disc between the fourth and fifth lumbar vertebrae. On November 21, 1946, Dr. Cox performed a Hibbs type of fusion between the third lumbar vertebra and the sacrum. Appellant received standard postoperative treatment and returned to work with the police department on June 29, 1947. He worked until September 1, 1947, and was on vacation from September 1, 1947, to September 14, 1947. He then worked until October 1, 1947, and was again off work until October 19, 1947 (alleged cause neurasthenia—treatment by private physician). Appellant then worked until December 2, 1947, and was off work again until December 7, 1947 (alleged cause sore throat—treated by

private physician, Dr. Benioff). He worked from December 8, 1947, to January 16, 1948, and was again off work until September 23, 1948.

On January 28, 1948, appellant appeared before the retirement board and testified on behalf of his application for retirement. On September 15, 1948, his application for retirement was denied and on October 28, 1948, his employment with the police department was terminated.

Based upon the record before it the superior court made a finding that: "At the time plaintiff [appellant] filed his said application for disability retirement with defendants [retirement board], he was not incapacitated for performance of duty with the police department by reason of any bodily injury received in, or illness caused by the performance of his duty; that he had made an excellent recovery from the injury sustained on September 24, 1946." It is this finding which appellant contends is not supported by the evidence.

The medical evidence bearing upon this issue, in addition to appellant's own testimony, consists of certain X-ray reports, the reports of the Rehabilitation Center of San Francisco where appellant went for physical and occupational therapy, one report from Dr. E. B. Towne, two reports from Dr. Frank W. Lusignan, and fourteen reports from Dr. Francis J. Cox. It was Dr. Cox who performed the laminectomy and was in charge of appellant's treatment.

All of the medical reports concede the existence of the original injury and that it was incurred in the line of duty. Both Dr. Towne, who saw appellant once, and Dr. Lusignan, who saw appellant twice, found him to be suffering from a "functional disorder" attributable to his injury. The reports of Dr. Cox, however, show an increasing doubt on his part of the bona fides of appellant's continuing disability.

On April 1, 1947, Dr. Cox reported to the board in part as follows: "The patient, as you know, has refused to follow through any treatment advised during the past seven to eight weeks. He has remained at home, and as far as I can judge, done nothing towards rehabilitating himself. . . .

"Ever since I first saw this patient he has been complaining of a chronic cough. His lungs have been examined by X-ray and nothing found. For some reason or other, he still seeks to attribute the cough to his injury. I can see no connection. . . . I do not see any reason why he should

not be able to resume his work with the Police Department within six to eight weeks from present date.''

On April 25, 1947, the Rehabilitation Center wrote to Dr. Cox as follows: ''Physical and Occupational Therapy— Increased range of motion of back. Patient does what is asked of him but is lazy and just goes through the motions.

''Attendance irregular in occupational therapy. Does what he is told but without interest.''

On May 31, 1947, Dr. Cox again wrote the retirement board in part as follows: ''Mr. Corcoran has been released to return to light duty with the Police Department as of Monday 9, June 1947.

''At no time during the past month has Mr. Corcoran complained of pain in his back or in his lower extremities. He still has a sense of stiffness in his low back, but I do not consider this complaint as disabling.''

On June 20, 1947, the Rehabilitation Center reported to Dr. Cox in part as follows: ''Physical and Occupational Therapy —Patient was discharged June 2, 1947 to go back to work. The motion of his back was free; he was able to lift 30 lbs.''

On October 14, 1947, Dr. Cox again reported to the retirement board in part as follows: ''Conclusion: The patient is able to move about freely and shows no objective evidence of disability on physical examination. I feel that the clinical result taken from lamectomy and fusion, in this case is excellent. . . . *I feel the patient should be able to continue work.* He stopped work on the 3rd of October 1947 voluntarily. He was released by me to return to work on October 13, 1947.'' (Emphasis ours.)

On January 17, 1948, Dr. Cox again reported to the retirement board in part as follows: ''Patient walks and moves with no evident disability. . . . There is no local muscle spasm. Patient bends forward to bring the finger tips to within 10″ of the floor. . . . It is my feeling that the patient has made excellent recovery to date and that he has only a mild residual disability, as evidenced by intermittent back and left leg pain. *He is not disabled for his present type of duty* with the San Francisco Police Department.

''Later in the morning, when this examination was conducted, a true reason for this patient's present complaint became apparent. He stopped me in the hall of the San Francisco Hospital with the following statement: 'If I tell you a real reason, will you change your mind about putting

me on the shelf for a week. My wife is getting operated on this morning and I want to be there.' '' (Emphasis ours.)

Again on March 15, 1948, Dr. Cox reported to the retirement board in part as follows: "I do not consider Mr. Corcoran disabled for duty with the Police Department."

While there is ample evidence from which the board might have concluded that at the time of his hearing appellant was suffering from a "functional disorder" attributable to his injury and while it must be conceded that such a functional disorder can be just as disabling as an organic one, yet in view of the medical evidence above quoted we must conclude that the decision of the retirement board is supported by substantial evidence in the light of the whole record, and that the finding of the superior court to the effect that appellant had made a complete recovery from his injury is amply supported by the record.

The second contention of appellant is that he did not receive a fair trial. His complaint in this regard is based on two grounds: (1) That he appeared before the retirement board without benefit of counsel and (2) that the retirement board received evidence after the case was submitted on January 28, 1948, to wit, the medical reports of Dr. Towne, Dr. Lusignan, and Dr. Cox.

Appellant has cited no authority to support his contention that his failure to appear through counsel before the retirement board resulted in any prejudice. He argues that he was unfamiliar with procedure and uncertain of his rights, yet being a police officer he undoubtedly had some knowledge of the rights of people so far as representation by counsel is concerned. Furthermore, the record shows that appellant was given an opportunity without interruption or interference to make a full and complete statement of his case. At the conclusion of his testimony the following questions and answers appear in the record: "Q. Are you going to produce any other testimony? Have you any other testimony that you want to present to the Board? A. Well, how do you mean, sir? Q. You told us just what the picture is as you see it. Now, you have the privilege of bringing in anyone else whose information to the Board will help your case out. In other words, if you want to bring Doctor Benioff in, or anybody else— I am not saying you have to, I just wanted to know if you wanted to? A. No, sir, I just wanted to tell you how I feel."

It appears to have been the practice of the retirement board, like other similar boards and commissions, to permit applicant to appear either in person or by counsel. In this case appellant's failure to be represented by counsel did not prevent him from receiving a fair trial. Furthermore, the point should have been raised before the superior court ·and not for the first time on this appeal.

Appellant's second complaint concerning the procedure of the retirement board would deserve serious consideration except for the fact that this point too is raised for the first time on appeal. The record shows that while appellant agreed at the hearing that all medical reports in the case could be admitted in evidence his stipulation could ·not possibly be construed to include medical reports not then in existence nor could it be interpreted as authorizing the receiving of evidence after the conclusion of the hearing and submission of the case. Yet the report of Dr. Towne ·dated February 17, 1948, the report of Dr. Lusignan dated March 4, 1948, and the report of Dr. Cox dated March 15, 1948, were received in evidence by the retirement board after the submission of the case and presumably considered by the board in arriving at its decision. Such procedure cannot be approved. This board acts in a quasi-judicial capacity. Its findings, based on conflicting evidence, are binding on the courts. It has no power to take or receive evidence, without the knowledge of the party adversely affected, or without giving him a right to cross-examine. These boards act as judicial bodies, with a limited jurisdiction. While not bound by technical rules of judicial procedure, they must afford the parties appearing before them a reasonably fair hearing. They cannot, lawfully, decide cases on evidence not submitted to or known by the other side. (*La Prade* v. *Department of Water & Power*, 27 Cal.2d 47 [162 P.2d 13]; *Rogers* v. *Retirement Board*, 109 Cal.App.2d 751, 757-758 [241 P.2d 611].) However since this point was not raised on the petition for rehearing, at the hearing of appellant's petition for writ of mandate nor on his motion for a new trial, and since at each of these hearings appellant was represented by counsel he cannot raise the point for the first time on this appeal. The sole issue raised by the pleadings before the superior court was the sufficiency of the evidence to support the decision of the retirement board. The evidence was offered on no other theory. An appellate court will not consider a theory of a case which is different from that

urged in the trial court and which is presented for the first time on appeal. (*White* v. *City of San Diego,* 126 Cal.App. 501 [14 P.2d 1062] ; *Rabbitt* v. *Carthage Marble Corp.,* 12 Cal.App.2d 572 [55 P.2d 1205] ; *Vitale* v. *City of Los Angeles,* 13 Cal.App.2d 704 [57 P.2d 993] ; *Mercer Casualty Co.* v. *Lewis,* 41 Cal.App.2d 918 [108 P.2d 65] ; *Grimes* v. *Nicholson,* 71 Cal.App.2d 538 [162 P.2d 934] ; *Palmer* v. *Wolff,* 88 Cal. App.2d 979 [200 P.2d 167] ; 2 Cal.Jur. 237 ; 3 Am.Jur. p. 35.)

Furthermore the reports of Dr. Lusignan and Dr. Towne were entirely favorable to the appellant while the March 15th report of Dr. Cox contained only a reiteration of his previously expressed opinion that appellant was not "disabled for duty with the Police Department." Even assuming that the final report of Dr. Cox must be disregarded (*Olive Proration Etc. Committee* v. *Agricultural Etc. Com.,* 17 Cal.2d 204 [109 P.2d 918]) the finding in question still finds ample support in the reports properly received in evidence pursuant to the stipulation.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied January 14, 1953, and appellant's petition for a hearing by the Supreme Court was denied February 10, 1953.